UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LISA G. PLUMMER,

                Plaintiff,        Civil Action No. 14-12349
                                          Honorable John Corbett O'Meara
                                          Magistrate Judge David R. Grand

v.

COMMISSIONER OF
SOCIAL SECURITY,

                Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [17, 19]**

       Plaintiff Lisa G. Plummer ("Plummer") brings this action pursuant to 42 U.S.C. §405(g), challenging the final decision of Defendant Commissioner of Social Security ("Commissioner") denying her application for Disability Insurance Benefits ("DIB") under the Social Security Act (the "Act"). Both parties have filed summary judgment motions [17, 19], which have been referred to this Court for a Report and Recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

**I.    RECOMMENDATION**

       For the reasons set forth below, the Court finds that the Administrative Law Judge's ("ALJ") conclusion that Plummer is not disabled under the Act is not supported by substantial evidence. Accordingly, the Court recommends that the Commissioner's Motion for Summary Judgment [19] be DENIED, Plummer's Motion for Summary Judgment [17] be GRANTED IN PART to the extent it seeks remand and DENIED IN PART to the extent it seeks an award of benefits, and that, pursuant to sentence four of 42 U.S.C. §405(g), this case be REMANDED to the ALJ for further proceedings consistent with this Report and Recommendation.

**II.     REPORT**

    **A.     Procedural History**

On November 28, 2011, Plummer filed an application for DIB, alleging a disability onset date of July 1, 2011. (Tr. 89-95). This application was denied initially on March 9, 2012. (Tr. 55-58). Plummer filed a timely request for an administrative hearing, which was held on December 12, 2012, before ALJ John Dodson. (Tr. 26-42). Plummer, who was represented by attorney Kiel Roeschke, testified at the hearing, as did vocational expert Elizabeth Pasikowski. (*Id.*). On February 12, 2013, the ALJ issued a written decision finding that Plummer is not disabled. (Tr. 13-21). On April 22, 2014, the Appeals Council denied review. (Tr. 1-5). Plummer timely filed for judicial review of the final decision on June 16, 2014. (Doc. #1).

    **B.     Framework for Disability Determinations**

Under the Act, DIB are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability" as the:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §1382c(a)(3)(A). The Commissioner's regulations provide that a disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled

2

> regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that the claimant can perform, in view of his or her age, education, and work experience, benefits are denied.

*Scheuneman v. Comm'r of Soc. Sec.*, 2011 WL 6937331, at *7 (E.D. Mich. Dec. 6, 2011) (citing 20 C.F.R. §404.1520); *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps …. If the analysis reaches the fifth step without a finding that claimant is not disabled, the burden transfers to the [defendant]." *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

**C.     Background**

    *1.     Plummer's Reports and Testimony[1]*

At the time of the administrative hearing, Plummer was 48 years old and, at 5'4" tall, she weighed 175 pounds. (Tr. 30). She lived in a house with her husband. (Tr. 35, 145). She had completed high school and taken some college classes. (Tr. 30). She testified that she stopped working in early 2011 when she was laid off. (Tr. 29-30). Later that year, her degenerative disc disease worsened, and although she subsequently attempted to work part-time as a hostess, she had to stop working because of her medical conditions in early 2012. (Tr. 29-30, 118). She testified that, by that point, her doctor had been telling her for approximately four years to stop working, but she "wasn't ready" and continued to try to work. (Tr. 38).

Plummer testified that she has had five back surgeries; however, she still has herniated

---

[1] The ALJ found that Plummer's mental impairments are non-severe. (Tr. 16). Plummer does not challenge this conclusion and cites only evidence related to her physical impairments in her motion for summary judgment. Consequently, the Court will limit its discussion to Plummer's physical impairments.

disks in her back, which cause her significant pain. (Tr. 30-32). She has also undergone pain injections and physical therapy, both of which provided some temporary relief, but were not successful in alleviating her pain. (Tr. 33). She has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, using her hands, and climbing stairs. (Tr. 150). She can stand for 15-20 minutes at a time, sit for 15-20 minutes at a time (usually using a heating pad), walk approximately ½ block (on "a good day"), and – per her doctor's orders – lift no more than five pounds. (Tr. 31-32, 34, 150). She wears a lower back brace and has a difficult time bending at the waist, climbing stairs, and using her arms to reach. (Tr. 35, 151).

Plummer further testified that she has difficulty concentrating and focusing because of her pain and because of the numerous medications she takes. (Tr. 33, 121). These medications also cause her to fall asleep once or twice each day, for 30-45 minutes at a time. (Tr. 33-34). She does not sleep well at night and is lucky to get three consecutive hours of sleep. (Tr. 34). She is able to care for her personal needs, help with laundry, and prepare simple meals (salads or soups), but she does not perform other household chores, shop for groceries, or drive "very far." (Tr. 36, 147-48). She attends church twice a month, but when she returns home, she is "sore." (Tr. 37, 146).[2]

### 2. Medical Evidence

The Court has thoroughly reviewed Plummer's medical record. In lieu of summarizing her medical history here, the Court will make references and provide citations to the record as necessary in its discussion of the parties' arguments.

### 3. Vocational Expert's Testimony

Elizabeth Pasikowski testified as an independent vocational expert ("VE") at the

---

[2] In a third party function report dated January 17, 2012, Plummer's husband, Daniel Plummer, generally corroborated his wife's statements. (Tr. 129-36).

administrative hearing. (Tr. 39-41). The VE characterized Plummer's past relevant work as ranging from unskilled to semi-skilled in nature, and from sedentary to light in exertion. (Tr. 39). The ALJ asked the VE to imagine a claimant of Plummer's age, education, and work experience, who could perform sedentary work, with the following additional limitations: no lifting more than five pounds; no repetitive bending, lifting, pushing, pulling, or climbing ropes, ladders, or scaffolds; a sit/stand option is required; only occasionally twisting, stooping, and crouching, and only rarely climbing of stairs; no concentrated exposure to extreme heat or cold, vibration, or hazards; only rarely looking down or holding her head in a static position; and only occasionally turning her head to the left or right. (Tr. 39-40). The VE testified that the hypothetical individual would be capable of performing Plummer's past relevant work as a scheduler (which was semi-skilled and sedentary). (Tr. 40).

### D. The ALJ's Findings

Following the five-step sequential analysis, the ALJ found that Plummer is not disabled under the Act. At Step One, the ALJ found that Plummer has not engaged in substantial gainful activity since July 1, 2011, the alleged onset date. (Tr. 15). At Step Two, the ALJ found that Plummer has the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spines (status post-multiple surgeries). (Tr. 15-17). At Step Three, the ALJ found that Plummer's impairments, whether considered alone or in combination, do not meet or medically equal a listed impairment. (Tr. 17).

The ALJ then assessed Plummer's residual functional capacity ("RFC"), concluding that she is capable of performing sedentary work, with the following additional limitations: she cannot lift more than five pounds; she is precluded from repetitive bending, lifting, pushing, pulling, or climbing ropes, ladders, or scaffolds; she requires a sit/stand option; she can only

5

occasionally twist, stoop, or crouch, and can rarely climb stairs; she must avoid concentrated exposure to extreme heat and cold, vibration, and hazards; she can only rarely look down or hold her head in a static position; and she can only occasionally turn her head to the left or right. (Tr. 17-21).

At Step Four, the ALJ determined that Plummer is capable of performing her past relevant work as a scheduler. (Tr. 21). As a result, the ALJ concluded that Plummer is not disabled under the Act. (*Id.*).

### E. Standard of Review

The District Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. §405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal citations omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses.") (internal quotations omitted). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotations omitted). In deciding whether substantial evidence supports the ALJ's decision, the court does "not try the case *de novo*, resolve conflicts in evidence or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Rogers*, 486

F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant.").

When reviewing the Commissioner's factual findings, the court is limited to an examination of the record and must consider the record as a whole. *Bass*, 499 F.3d at 512-13; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). The court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council," or in this case, the ALJ. *Heston*, 245 F.3d at 535; *Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989). There is no requirement, however, that either the ALJ or this court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all evidence without directly addressing in his written decision every piece of evidence submitted by a party.") (internal quotations omitted). If the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted); *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion'").

**F. Analysis**

    *1. The ALJ's Failure to Specifically Evaluate Plummer's Impairments In Light Of Listing 1.04(A) Constitutes Legal Error*

Plummer argues that the ALJ's Step Three analysis and determination that her impairments do not meet or medically equal a listed impairment is not supported by substantial evidence. (Doc. #17 at 15-22). In this case, the ALJ specifically found at Step Two that

7

Plummer has the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spines (status post-multiple surgeries). (Tr. 15-17). Then, however, at Step Three, the ALJ merely concluded – with virtually no analysis whatsoever – that Plummer's severe impairments "do not meet the criteria of any listed impairments …." (Tr. 17). The Court finds that the ALJ's failure to identify what Listings he purportedly considered at this step, and to specifically consider Plummer's impairments in light of Listing 1.04(A), constitutes legal error.

Under the theory of presumptive disability, a claimant is eligible for benefits if he has an impairment that meets or medically equals a listed impairment. *See Christephore v. Comm'r of Soc. Sec.*, 2012 WL 2274328, at \*6 (E.D. Mich. June 18, 2012). When considering presumptive disability at Step Three, "an ALJ must analyze the claimant's impairments in relation to the Listed Impairments and must give a reasoned explanation of his findings and conclusions in order to facilitate meaningful review." *Id.* (citing *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 416 (6th Cir. 2011)). An ALJ's failure to sufficiently articulate his Step Three findings is error. *See M.G. v. Comm'r of Soc. Sec.*, 861 F. Supp. 2d 846, 858-59 (E.D. Mich. 2012); *Reynolds*, 424 F. App'x at 416; *Tapp v. Astrue*, 2011 WL 4565790, at \*5 (E.D. Ky. Sept. 29, 2011) (discussing reversal in a series of cases where the ALJ "made only a blanket statement that the claimant did not meet or equal a Listing section").

Thus, in numerous cases similar to this one, courts have recognized that an ALJ's failure to explicitly consider whether a claimant's impairments meet or medically equal a listed impairment constitutes legal error. For example, in *Bolla v. Comm'r of Soc. Sec.*, 2012 WL 884820, at \*6-8 (E.D. Mich. Feb. 3, 2012), the ALJ concluded at Step Two that the plaintiff had the severe impairments of multiple sclerosis and depression, but then simply stated, in conclusory fashion, that "the impairments, or combination of impairments, do not meet or

medically equal the specific criteria of 1.00 Musculoskeletal Symptoms, 11.00 Neurological, 12.00 Mental Disorders." *Id.* at *6. The ALJ specifically considered the plaintiff's depression in light of Listing 12.04 (affective disorders), but did not consider any other Listing – including Listing 11.09 (multiple sclerosis) – in any detail whatsoever. *Id.* In finding the ALJ's Step Three analysis insufficient under the above standards, the *Bolla* court held that the "ALJ's lack of narrative deprives the federal court of its ability to act as an appellate tribunal and instead forces the court to become the finder of fact …." *Id.* Consequently, the *Bolla* court determined that remand was appropriate. *Id.* at *8.

Similarly, in *Christephore*, *supra*, the court held that the ALJ erred in failing "to evaluate (or even mention) the relevant listing" when determining medical equivalence at Step Three. *Christephore*, 2012 WL 2274328, at *5. In that case, the ALJ concluded that the plaintiff had the severe impairment of HIV, but then failed to consider whether the plaintiff met or medically equaled Listing 14.08 (HIV infection), saying only that the plaintiff's impairments did not meet or medically equal Listing 14.00 (Immune System Disorders). *Id.* at *5-6. In concluding that the ALJ erred, the court explained:

> The ALJ does not evaluate Plaintiff's physical symptoms in relation to those described in 14.00 and does not articulate his reasons for finding that Plaintiff's symptoms do not meet or equal those criteria. His conclusory, one-sentence statement that Plaintiff's impairments do not meet or medically equal the criteria of 14.00 is contrary to the requirements that ALJs explain the reasons for their decisions.

*Id.* at *6. A similar conclusion was reached in *M.G.*, where "the ALJ did not cite, discuss, or resolve any conflicts in the evidence in concluding that [the claimant] did not meet or medically equal a Listing. Nor did the ALJ even identify which Listing(s) [claimant's] impairments were compared with." *M.G.*, 861 F. Supp. 2d at 858.

In this case, the ALJ expressly found that Plummer suffers from degenerative disc disease

9

of the cervical, thoracic, and lumbar spines. (Tr. 15-17). However, he failed to consider whether these impairments meet or medically equal Listing 1.04(A) ("disorders of the spine") – indeed, he failed to even *mention* this Listing. The ALJ's failure in these respects constitutes legal error. *See, e.g.*, *Christephore*, 2012 WL 2274328, at *7; *M.G.*, 861 F. Supp. 2d at 858-59; *Bolla*, 2012 WL 884820, at *6-8.

## 2. *The ALJ's Error Was Not Harmless*

This Court will not, however, overturn an ALJ's decision if the failure to articulate Step Three findings was harmless. *See M.G.*, 861 F. Supp. 2d at 859. Such an error is harmless where "concrete factual and medical evidence is apparent in the record and shows that even if the ALJ had made the required findings, the ALJ *would have* found the claimant not disabled …." *Id.* at 861 (quoting *Juarez v. Astrue*, 2010 WL 743739, at *5-6 (E.D. Tenn. Mar. 1, 2010)) (internal quotations omitted) (emphasis in original). In short, the case law discussed in the preceding section simply describes the minimum level of articulation an ALJ must provide regarding his Step Three analysis. In *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011), the court explained that the Sixth Circuit "has consistently rejected a heightened articulation standard, noting . . . that the ALJ is under no obligation to spell out 'every consideration that went into the step three determination' or 'the weight he gave each factor in his step three analysis,' or to discuss every single impairment." *Staggs*, *supra* at *3 (quoting *Bledsoe v. Barhart*, 165 F. App'x 408, 411 (6th Cir. 2006)). The *Staggs* court further stated, "Nor is the procedure so legalistic that the requisite explanation and support must be located entirely within the section of the ALJ's decision devoted specifically to step three; the court in *Bledsoe* implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Id.* (citing *Bledsoe, supra* at 411); *see also Smith v. Comm'r*

*of Soc. Sec.*, 2012 WL 4897364, at *6 (E.D. Mich. Sept. 14, 2012). Thus, remand is not required where the evidence makes clear that even if the ALJ "had made the required findings, [he] *would have* found the claimant not disabled." *M.G.,* 861 F.Supp.2d at 861 (emphasis in original). Conversely, remand is appropriate in cases where the district court's review of the ALJ's decision and the record evidence leaves open the possibility that a Listing is met. *See Reynolds*, 424 F. App'x at 416 ("in this case, correction of such an error is not merely a formalistic matter of procedure, for it is possible that the evidence [the plaintiff] put forth could meet this listing"); *see also May v. Astrue*, 2011 WL 3490186, at *9 (N.D. Ohio June 1, 2011).

In order for Plummer to meet the criteria of Listing 1.04(A), she must show that she has a disorder of the spine (*i.e.*, degenerative disc disease) with:

> Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine).

20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A). It is well-settled that to "meet" a Listing, a claimant's impairments must satisfy each and every element of the Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530 (1990) ("For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify."); *Blanton v. Soc. Sec. Admin.*, 118 F. App'x 3, 6 (6th Cir. 2004) ("When all the requirements for a listed impairment are not present, the Commissioner properly determines that the claimant does not meet the listing."). In this case, a thorough discussion of the objective medical evidence at least leaves open the possibility that Plummer could be found to meet the requirements of Listing 1.04(A). *See Reynolds*, 424 F. App'x at 416; *May*, 2011 WL 3490186, at *9.

By way of background, medical records preceding the alleged disability onset date (July

1, 2011) establish that Plummer has an extensive history of severe back impairments and has undergone multiple lumbar and cervical spine surgeries. An MRI of Plummer's lumbar spine performed on October 5, 2007, documents status post-laminectomy at L4-L5 and L5-S1; a bulging disc at L3-L4 and flattening of the ventral thecal sac; and scar tissue that abuts and partially encompasses the right L5 nerve root. (Tr. 168). On January 9, 2008, Dr. Bradley Ahlgren performed an anterior cervical discectomy and fusion at C4-C5, with removal of C5-C7 Orion plate and exploration of fusion at C5-C6 and C6-C7. (Tr. 446-48). Postoperative diagnoses included cervical radiculopathy with cervical disc herniation at C4-C5, with previous C5-C6 and C6-C7 fusion. (Tr. 446). Lumbar and lumbosacral spine MRIs performed on January 18, 2010, showed degenerative disc disease at the L3-L4 through L5-S1 levels, postoperative changes from L4 through S1, minimal retrolisthesis of L3 and L4 with mild disc bulge, and a slight narrowing of the neural foramina, but no disc herniation or central canal stenosis. (Tr. 224-27).

Focusing on the medical evidence post-dating Plummer's alleged onset date, treatment notes from a visit to Dr. Ahlgren on October 27, 2011, reveal complaints of worsening pain in the neck, posterior thoracic area, right upper extremity, lower back, and right leg. (Tr. 295). On examination, Dr. Ahlgren observed some mild giveaway weakness of the right shoulder due to pain, "some mild loss of sensory to light touch in the S1 distribution on the right," and limited cervical range of motion. (*Id.*). An MRI of Plummer's lumbar spine performed on November 6, 2011, showed "some degree of left neural foraminal narrowing at the L5-S1 level with abutment and slight compression of the existing left L5 nerve root that may be secondary to enhancing scar tissue." (Tr. 290). An MRI of Plummer's cervical spine performed the same day was significant for a mild degree of central canal stenosis at C5-C6 and C6-C7, as well as mild right neural

12

foraminal narrowing at C6-C7. (Tr. 292). And, an MRI of Plummer's thoracic spine from the same date revealed disc protrusions at T6-T7 and T7-T8, causing mild effacement of the thecal sac at these levels and moderate central canal stenosis at T7-T8. (Tr. 291).

On November 16, 2011, Plummer was seen at Royal Oak Hospital for neck, thoracic, and low back pain. (Tr. 256). On physical examination, her cervical range of motion was mildly restricted in flexion and left rotation, and she had decreased range of motion of the lumbar spine on flexion and extension. (Tr. 258-59).

On February 2, 2012, Plummer presented to the emergency room at Royal Oak Hospital with "severe acute thoracic pain and numbness in the lower extremities." (Tr. 484). On physical examination, she had tenderness to palpation at T7-T8 and a positive straight leg raise on the right, which was described as "chronic." (Tr. 492-93). She was admitted to the hospital for six days for thoracic disc herniation and pain. (Tr. 484). A thoracic spine MRI performed on February 4, 2012, showed a central disk spur complex at T7-T8, which was causing "some effacement on the ventral thecal sac and mild impression on the spinal cord," as well as some mild central and left paracentral disc protrusion at T6-T7 without significant cord compression. (*Id.*). These MRI findings were characterized as "slightly worse than her prior MRIs done in November 2011." (*Id.*).

On July 2, 2012, Plummer underwent a complete myelogram of her lumbar and thoracic spines. (Tr. 563-64). This showed disc space narrowing at L4-L5 and L5-S1; mild disc bulging at T12-L1 with very mild impression upon the anterior arachnoid sac but no nerve root compromise; mild disc bulging at L3-L4 with no herniation, but with equivocal minimal retrolisthesis of L3 on L4; slight disc bulging at T4-T5 with no significant canal stenosis; small disc protrusions bilaterally at T5-T6 with "slight cord distortion"; disc protrusion at T6-T7

"resulting in focal impression upon the left lateral aspect of the anterior arachnoid sac together with mild distortion of the underlying thoracic cord"; at T7-T8 "stable broad-based disc bulging/herniation resulting in moderate impression upon the anterior arachnoid sac and mild flattening of the anterior thoracic cord"; and some calcification of the ligamentum flavum at T9-T10 and T10-T11, resulting in impression on the posterolateral arachnoid sac, but with no effect on the thoracic cord. (Tr. 563-64). At a subsequent visit to Dr. Ahlgren on July 24, 2012, Plummer was diagnosed with lumbar stenosis and spondylosis. (Tr. 565-67).

As set forth above, in order for Plummer to meet the criteria of Listing 1.04(A), she must show "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04(A). When comparing the medical evidence discussed above to the requirements of this Listing, it is apparent that Plummer has offered evidence at least tending to satisfy each of these requirements, such that the Court cannot conclude that the ALJ's failure to evaluate her impairments in light of this Listing was harmless.

Specifically, the Commissioner concedes that the required criteria of nerve root compression is "unequivocally met on this record," pointing to the evidence of compression of the L5 nerve root on Plummer's November 16, 2011, lumbar spine MRI. (Doc. #19 at 16-17 (citing Tr. 261)). Moreover, this is not the only mention of nerve root compression: Plummer's February 2012 thoracic spine MRI showed a central disk spur complex at T7-T8, which was causing "mild impression on the spinal cord." (Tr. 484). And, Plummer's July 2012 myelogram showed "distortion" or "flattening" of the spinal cord at more than one level. (Tr. 563-64). The

14

ALJ failed to mention any of this objective medical evidence in his decision.

In addition to evidence of nerve root compression, Listing 1.04(A) also requires evidence of neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss, and, if there is involvement of the lower back, a positive straight-leg raising test. *See* 20 C.F.R. Pt. 404, Subpt. P., App. 1, Listing 1.04A. The record contains undisputed evidence of most – if not all – of these indicators, yet the ALJ's decision fails to mention any of it. For example, as the Commissioner recognizes, neuro-anatomic distribution of pain was found on October 27, 2011, when Dr. Ahlgren noted that, on examination, Plummer had "some mild loss of sensory to light touch in the S1 distribution on the right." (Tr. 295). In addition, Plummer complained on multiple occasions of pain radiating to her right arm and leg (Tr. 216, 256, 285, 324) and of tingling, numbness, and/or weakness in her upper and lower extremities (Tr. 216-17, 256, 508, 565), all of which at least arguably evidences neuro-anatomic distribution of pain. Moreover, there is evidence of a positive straight leg raising test (Tr. 492-93), and of deep tendon reflex loss on more than one occasion (Tr. 282, 284), both of which the ALJ failed to mention. And, as the Commissioner recognized, although Plummer did not have limited range of motion at each and every visit, it was "often present." (Doc. #19 at 17 (citing Tr. 176, 258-59, 295, 388, 576)).

In summary, there is no dispute that at least several of the criteria of Listing 1.04(A) are satisfied, and certainly enough record evidence from which the ALJ could find that all of the Listing's criteria are satisfied. The ALJ concluded that Plummer has degenerative disc disease of the lumbar, cervical, and thoracic spines. (Tr. 15-17). There is objective MRI evidence of nerve root compression. (Tr. 261, 484). There also is evidence in the record of a limited range of lumbar motion (Tr. 176, 258-59, 295, 388, 576), a fact that the ALJ noted (Tr. 18-19), as well

15

as reflex loss (Tr. 282, 284), sensory loss (Tr. 295), and a positive straight leg raise test (Tr. 492-93), all facts that the ALJ failed to mention. The Commissioner attempts to minimize these facts, characterizing the evidence of nerve root compression as "minimal," asserting that neuro-anatomic distribution of pain was "noted just once," and asserting that straight leg raising "was positive on only one occasion." (Doc. #19 at 16-17). The Court notes that, in some respects, the medical evidence is somewhat equivocal with respect to certain criteria of Listing 1.04(A). Viewing the record as a whole, however, it appears that had the ALJ properly considered Plummer's back impairment in light of Listing 1.04(A), he could very well have determined that Plummer met or medically equaled[3] that Listing's criteria.

For these reasons, the Court cannot conclude that the ALJ's error in failing to specifically consider Plummer's impairments in light of Listing 1.04(A) was harmless. Regardless of how the ALJ might ultimately decide Plummer's claim, at this juncture, the Court cannot say that, if the ALJ had made the required findings at Step Three, he necessarily *would have* found that Plummer does not meet or medically equal the relevant Listing.[4] And, if he does find that the evidence establishes that Plummer meets or medically equals Listing 1.04(A), then Plummer would be presumptively entitled to benefits. *See Christephore*, 2012 WL 2274328, at *6. Thus, because the Court cannot say that the ALJ's error was harmless, remand is appropriate. *See*

---

[3] Even if Plummer cannot demonstrate that she meets the criteria of Listing 1.04(A), she can still satisfy her burden at Step Three by proving that she has an impairment (or combination of impairments) that medically equals this Listing. To do so, she must "present medical evidence that describes how [her] impairment is equivalent to a listed impairment." *Lusk v. Comm'r of Soc. Sec.*, 106 F. App'x 405, 411 (6th Cir. 2004). This means that Plummer must present medical findings showing symptoms or diagnoses equal in severity and duration "to *all* the criteria for the one most similar listed impairment." *Daniels v. Comm'r of Soc. Sec.*, 70 F. App'x 868, 874 (6th Cir. 2003) (internal quotations omitted).

[4] Nor is it the Court's role to make such factual determinations in the first instance. *See Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996); *Bolla*, 2012 WL 884820, at *6.

*Reynolds*, 424 F. App'x at 416.[5]

## III. CONCLUSION

For the foregoing reasons, the Court RECOMMENDS that the Commissioner's Motion for Summary Judgment [19] be DENIED, Plummer's Motion for Summary Judgment [17] be GRANTED IN PART, the ALJ's decision be REVERSED, and this case be REMANDED for further proceedings consistent with this Report and Recommendation.

Dated: May 28, 2015                                s/David R. Grand
Ann Arbor, Michigan                                DAVID R. GRAND
                                                   United States Magistrate Judge

### NOTICE REGARDING OBJECTIONS

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and Fed. R. Civ. P. 72(b)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of HHS*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981). The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Sec'y of HHS*, 931 F.2d 390, 401 (6th Cir. 1991);

---

[5] Plummer also argues that remand is appropriate because the ALJ erred in failing to obtain an expert medical opinion regarding medical equivalency. (Doc. #17 at 22-24). Because the Court is remanding on other grounds, it need not address this issue in detail. However, the Court notes that the Honorable Patrick J. Duggan recently surveyed case law on this issue and concluded that "the lack of an expert medical opinion on the issue of equivalency" requires remand, because "it is not the prerogative of this Court, the ALJ, or [the Commissioner] to draw conclusions about the raw medical data and how [the plaintiff's] severe impairments may interact with the others." *Sheeks v. Comm'r of Soc. Sec.*, 2015 WL 753205, at *7 (E.D. Mich. Feb. 23, 2015). Thus, on remand, to the extent necessary, the ALJ should ensure that the record contains an expert medical opinion on the issue of equivalency.

*Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to E.D. Mich. L.R. 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

## **CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on May 28, 2015.

s/Eddrey O. Butts<br>
EDDREY O. BUTTS<br>
Case Manager